Booker T. McDONALD *v.* STATE of Arkansas

CR 74-137                                   520 S.W. 2d 292

Opinion delivered March 31, 1975

*Harold L. Hall,* Public Defender, by: *Jewel Brown,* Dep. Public Defender, for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Robert A. Newcomb,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. This is a postconviction petition under Criminal Procedure Rule 1. In 1967 the appellant McDonald was charged with first degree murder in the shooting of a Little Rock police officer. McDonald, represented by three retained attorneys, entered a negotiated plea of guilty, the prosecutor having waived the death penalty. A jury, empaneled pursuant to Ark. Stat. Ann. § 43-2152 (Repl. 1964), fixed McDonald's punishment at life imprisonment.

Almost seven years later McDonald filed the present

petition, asserting that he was denied the effective assistance of counsel. At the Rule 1 hearing McDonald testified in his own behalf. The State introduced the testimony of two of McDonald's former attorneys and of two officers who were present when McDonald made a confession of guilt soon after his arrest. After the Rule 1 hearing the trial judge made detailed findings of fact and concluded that there was no merit in the petition. This appeal is from that ruling.

McDonald's present attorneys argue primarily that this court, in measuring the effectiveness of counsel, should adopt a standard of reasonable competence instead of the standard that we have previously approved, as in *Clark* v. *State*, 255 Ark. 13, 498 S.W. 2d 657 (1973): "A charge of this sort [ineffective representation] can prevail only if the acts or omissions of the attorney result in making the proceedings a farce and mockery of justice, shocking the conscience of the court, or if the representation is so patently lacking in competency or adequacy that it becomes the duty of the court to be aware of and correct it."

There are two answers to the appellant's contention. First, not all of the federal courts have abandoned the "mockery of justice" standard. For example, in a recent case, *United States* v. *Hager*, 505 F. 2d 737 (1974), the Court of Appeals for the Eighth Circuit explained that the mockery of justice standard "is not meant to be an impenetrable obstacle to any meaningful analysis of the facts of the particular case." The court then quoted with approval this language from its earlier opinion in *McQueen* v. *Swenson*, 498 F. 2d 207 (1974):

> Stringent as the "mockery of justice" standard may seem, we have never intended it to be used as a shibboleth to avoid a searching evaluation of possible constitutional violations; nor has it been so used in this circuit. It was not intended that the "mockery of justice" standard be taken literally, but rather that it be employed as an embodiment of the principle that a petitioner must shoulder a heavy burden in proving unfairness.

Secondly, McDonald has not met the burden of proving ineffective representation, no matter what standard is

applied. At the Rule 1 hearing McDonald did not deny having killed the officer; in fact, his testimony did not even touch upon the circumstances surrounding the homicide. McDonald merely stated that he did not really want to plead guilty, that he was persuaded by his attorneys to do so, and that they did not explain the possibility of his being convicted of murder in the second degree. It is also argued now that the defense lawyers were at fault in not interviewing every witness for the State.

The overwhelming weight of the proof is contrary to McDonald's testimony. One of his former attorneys testified that the State's case had been one of the strongest he had ever seen: McDonald admitted having shot the officer without warning; witnesses heard the shot and saw McDonald leaving the scene; the ballistics report was affirmative. Capital punishment was then in effect. McDonald had a criminal record. The attorneys interviewed some of the officers and had copies of the witnesses' statements. There is no showing whatever that additional interviews would have revealed facts favorable to McDonald.

For from two to three weeks the attorneys spent most of their time working on the case — preparing for trial and seeking a waiver of the death penalty, which was all that McDonald was interested in. The prosecutor repeatedly refused to make that concession unless the police department would agree to it. According to the attorneys, McDonald was thrilled and pleased when the negotiations were finally successful. It is also significant that McDonald waited almost seven years, and until after the Supreme Court's invalidation of existing capital punishment statutes, before expressing his dissatisfaction with his lawyers' handling of his case. Upon the record now before us we must conclude that the trial judge's findings are supported by the great preponderance of the proof.

Affirmed.

JONES, J., not participating.