Clemmie Genero CASON *v.* STATE of Arkansas

CR 80-172                  610 S.W. 2d 891

Supreme Court of Arkansas

Opinion delivered February 2, 1981

*E. Alvin Schay*, State Appellate Public Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Arnold M. Jochums*, Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. In 1978 Cason was convicted at a non-jury trial of delivery of heroin and was sentenced to ten years' imprisonment. In 1979 we affirmed the conviction as a no-merit appeal. Some two months later we gave Cason permission to seek postconviction relief in the trial court under Rule 37, for ineffective assistance of counsel.

This appeal is from the trial court's denial of relief after an evidentiary hearing at which Cason and his former attorney, Louis W. Rosteck, testified.

In 1976 three informations were pending against Cason, two arising under the Controlled Substances Act and the third charging theft by receiving. Cason retained Rosteck as paid counsel to represent him in the first drug case. Cason then jumped bail and was away from Arkansas for more than a year. After Cason was again taken into custody the first case was tried. Rosteck succeeded in having it dismissed on the ground that the officers had obtained the drugs by an illegal search.

At the conclusion of that case the trial judge appointed Rosteck as counsel for Cason in the other two cases. After the conviction in the second case, which is the one now before us, Cason pleaded guilty to the charge of theft by receiving. Any effort to obtain postconviction relief in that case under Rule 26 has evidently been abandoned.

Cason, in his petition in this court for permission to seek relief under Rule 37, made various conclusory allegations of negligence, ineffectiveness, and incompetency on Rosteck's part. The petition asserted that Rosteck failed to make adequate pretrial investigation. The only really specific allegation of fact was that Rosteck failed to locate, interview, and subpoena five witnesses who were available and would have testified that Cason was with them on the night of the offense and could not have been at the scene of the crime.

The controlling principles of law are clear. We have explained that our "mockery of justice" standard for the determination of ineffectiveness of counsel is not to be taken literally, but it does embody the principle that the petitioner must shoulder a heavy burden in proving unfairness. *McDonald* v. *State*, 257 Ark. 879, 520 S.W. 2d 292 (1975). Hence Cason had the burden of showing clearly and convincingly that Rosteck's representation, at least as it manifested itself in the courtroom, was so patently lacking in competence that it became the duty of the trial judge to be aware of it and to correct it.

Cason testified below. He wholly failed to substantiate his assertion that there were five known available witnesses who would have supported what was apparently his main defense, that of alibi. In his testimony, Cason did not even refer to those supposed witnesses, much less give their names, identify them in any way, or explain how they could have remembered more than two years later that Cason was at a party on a certain night at a certain place. The trial judge would have been justified in finding that the allegations in Cason's petition with reference to those witnesses were simply false.

As to the pretrial investigation, Rosteck testified that he examined the prosecutor's file and talked to Officer Littles, who confirmed the facts stated in the file. Rosteck explained why he did not call either of the two possible witnesses, Johnson and Walls, who were somewhat vaguely referred to in Cason's testimony below. Rosteck said that Cason, against Rosteck's advice, testified at the trial and "grandstanded" by claiming that the officers were framing him and that the prosecution was a farce. Rosteck, a lawyer with 25 years' experience in criminal cases, ended his testimony by saying that if he had it all to do over again he knew of nothing that he would do differently.

Cason's argument in this court falls decidedly short of showing that the trial judge's denial of postconviction reliefs is clearly erroneous. Cason's assertions are largely negative, such as a charge that Rosteck failed to learn the identity of the prosecution's confidential informer. It is not shown, however, that the informer could have supplied relevant admissible testimoy. See Ark. Stat. Ann. § 28-1001, Uniform Evidence Rule 509 (Repl. 1979). So with the other general allegations. It would be futile for the trial court or for this court to order a new trial without any showing whatever that facts favorable to the petitioner should have been developed by further investigation or could now be developed.

Affirmed.

PURTLE, J., concurs.

JOHN I. PURTLE, Justice, concurring. I concur in the results reached, however, on slightly different grounds. My

primary objection to the standard of review in cases alleging ineffective assistance of counsel was the use of the phrase "farce and mockery" as a standard of review. This term originated in the Court of Appeals for the District of Columbia. *Diggs* v. *Welch*, 148 F. 2d 667 (D.C. Cir. 1945). However, the circuit subsequently abandoned the phrase and now uses the standard of "reasonably competent assistance of an attorney acting as his diligent conscientious advocate."

The standard of review by this court in cases where there is an allegation of ineffective assistance of counsel has not been entirely clear. We cannot form a hard and fast rule to be applied in all cases regardless of the facts. However, we should depart from the standard of requiring such defense to have amounted to a "farce and mockery" before it becomes ineffective. I have not found a case in which the United States Supreme Court has set forth a rule to be used to determine when counsel is ineffective. My search has determined that the "farce and mockery" standard has been rejected by the Courts of Appeal for the District of Columbia, *United States* v. *Decoster*, 624 F. 2d 196 (1976); First Circuit, *United States* v. *Bosch*, 584 F. 2d 1113 (1978); Third Circuit, *Moore* v. *United States*, 432 F. 2d 730 (1970); Fourth Circuit, *Marzullo* v. *Maryland*, 561 F. 2d 540 (1977), cert. denied 435 U.S. 1011 (1978); Fifth Circuit, *United States* v. *Gray*, 565 F. 2d 881 (1978), cert. denied 435 U.S. 955 (1978); Sixth Circuit, *United States* v. *Toney*, 527 F. 2d 716 (1975), cert. denied 429 U.S. 838 (1976); Seventh Circuit, *United States* v. *Sielaff*, 542 F. 2d 377 (1976), cert. denied sub. nom. *Sielaff* v. *William*, 423 U.S. 876 (1975); Eighth Circuit, *Pinnell* v. *Cauthron*, 540 F. 2d 938 (1976); Ninth Circuit, *Cooper* v. *Fitzharris*, 586 F. 2d 1325 (en banc) (1978), cert. denied 440 U.S. 974 (1979); Tenth Circuit, *Dyer* v. *Crisp*, 613 F. 2d 275 (1980), cert. denied 445 U.S. 945 (1980). Therefore, the Second Circuit is the only Circuit Court of Appeals still adhering to the "farce and mockery" standard.

The earliest case I found on the subject in Arkansas was *Barnhill* v. *State*, 247 Ark. 28, 444 S.W. 2d 97 (1969). In

*Barnhill*, we stated:

> ... We cannot agree with appellant's assertion that his counsel, because of inexperience or illness, conducted his defense in such a manner that his trial was a farce and a mockery of justice which denied him a fair trial. ...

We dealt with the same subject in *Franklin & Reid* v. *State*, 251 Ark. 223, 471 S.W. 2d 760 (1971). In *Franklin* we stated:

> Yet, when the professional conduct of non-appointed counsel is so lacking in competence or good faith that it shocks the conscience of the court or prosecutors, and the trial is reduced to a sham, farce or mockery of justice, permitting the proceedings to continue will constitute a denial of due process.

The words quoted above were from *United States* v. *Maroney*, 423 F. 2d 865 (3rd Cir. 1970). It also quoted several other federal cases.

Again, we considered this problem in *Davis* v. *State*, 253 Ark. 484, 486 S.W. 2d 904 (1972). In *Davis* we quoted from *Poole* v. *United States*, 438 F. 2d 325 (8th Cir. 1971), as follows:

> ... 'only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court. *Hanger* v. *United States*, 428 F. 2d 746, 748 (8th Cir. 1970).' ...

The next major attempt to resolve the question of ineffective assistance of counsel seems to have been in *Leasure* v. *State*, 254 Ark. 961, 497 S.W. 2d 1 (1973). In *Leasure* we stated:

> ... a charge of inadequate representation can prevail only if the acts or omissions of an accused's attorney result in making the proceedings a farce and a mockery

of justice, shocking the conscience of the court, or the representation is so patently lacking in competence or adequacy that it becomes the duty of the court to be aware of and correct it.

Again, we cited a federal case in support of this holding. *Slawek* v. *United States*, 413 F. 2d 957 (8th Cir. 1969). Other circuit courts of appeal were also cited.

We were faced with the problem again in the case of *McDonald* v. *State*, 257 Ark. 879, 520 S.W. 2d 292 (1975). In *McDonald* we stated that the federal courts had not abandoned the "mockery of justice" standard. We then quoted from *United States* v. *Hager*, 505 F. 2d 737 (1974), which in turn had quoted from *McQueen* v. *Swenson*, 498 F. 2d 207 (1974).

Stringent as the "mockery of justice" standard may seem, we have never intended it to be used as a shibboleth to avoid a searching evaluation of possible constitutional violations; nor has it been so used in this circuit. It was not intended that the "mockery of justice" standard be taken literally, but rather that it be employed as an embodiment of the principle that a petitioner must shoulder a heavy burden in proving unfairness.

Therefore, *McDonald* followed the prior cases in quoting verbatim from the Eighth Circuit Court of Appeals.

The next significant case I reviewed in Arkansas was *Kozal* v. *State*, 264 Ark. 587, 573 S.W. 2d 323 (1978). In *Kozal* we stated:

The evidence falls short in warranting a holding that appellant's initial counsel's services reduced the proceeding to a farce, a mockery of justice and shocking to the Court. It must be remembered that effective assistance of counsel does not equate with success. The mere showing of improvident strategy, or bad tactics is not sufficient to establish that defendant was denied effective assistance of counsel . . .

Although the case cited *Franklin & Reid* v. *State*, supra, it also cited *Pinnell* v. *Cauthron*, 540 F. 2d 938 (8th Cir. 1976).

Two more recent cases have dealt with the subject, the first being *Jones* v. *State*, 267 Ark. 79, 589 S.W. 2d 16 (1979), wherein we stated:

> The advice given by retained counsel obviously is within the range of competence demanded of attorneys in criminal cases.

Another case still in the advance sheets is *Hoover* v. *State*, 270 Ark. 978, 606 S.W. 2d 744 (1980), wherein we stated:

> The United States Court of Appeals, Eighth Circuit, puts the test for competency in this way: "[T]rial counsel fails to render effective assistance when he does not exercise the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *Pinnell* v. *Cauthron*, 540 F. 2d 938 (8th Cir. 1976).

Therefore, it appears that almost every time we have tried to define ineffective assistance of counsel we have resorted to the definitions used by the federal courts and more particularly the Eighth Circuit Court of Appeals. So far as I am able to determine, the standard set out in *Pinnell* v. *Cauthron*, supra, is still in force and effect in the Eighth Circuit. The standard applied in the Eighth Circuit is as follows:

> The standard used by this court in evaluating whether a defendant has been denied effective assistance of counsel is that trial counsel fails to render effective assistance when he does not exercise the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances.

· In my opinion, we have not heretofore set out a standard which we believe should be followed by this court in cases where the question of ineffective assistance of counsel is at issue. We have in the past followed the federal courts and most often the Court of Appeals for the Eighth Circuit. I believe the *Pinnell* standard is a good one and would be willing to adopt it because it is certainly more understandable than *McQueen* v. *Swenson*, supra, which we quoted in *McDonald* v. *State*, supra.

The standard set out by the majority states the degree of proof needed to prove ineffective assistance of counsel and states the assistance must have been so patently lacking in competence that it becomes the duty of the trial judge to be aware of it and to correct it. I agree with this as far as it goes, but it fails to set out any criteria to be used in reaching the conclusion. In my opinion, we should at least require the challenger to prove the alleged ineffective counsel failed to do certain things which a reasonably competent counsel would have done or did certain things which a reasonably competent counsel would not have done under the same or similar circumstances.

Regardless of the standard adopted by this court we should also find that the ineffective assistance of counsel was prejudicial to the defendant before granting relief.