Stanley Frank BOYD *v.* STATE of Arkansas

CR 94-321                                    889 S.W.2d 20

Supreme Court of Arkansas
Opinion delivered December 5, 1994

*Robert T. Rogers, II*, Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Appellant Stanley Frank Boyd appeals from his conviction and forty year sentence for the rape of an eight-year-old girl. Three points of error are argued: a motion to suppress his statement to the police should have been sustained, a juror should have been excused for cause, and a mistrial should have been ordered because of the prosecutor's closing argument. Finding no error, we affirm the judgment of conviction.

### Motion To Suppress

Lt. J. R. Ashlock of the Carroll County Sheriff's Office testified concerning a complaint for sexual molestation. He interviewed the alleged victim and several members of her family. A sister of the victim testified that she, the victim and their brother had spent the previous night in the tent of Boyd, a family friend. The sister said she awoke and saw Boyd kissing her sister, fondling her breasts and "running his finger in and out of her."

The victim's mother told Lt. Ashlock that her daughter had complained of pain on urination and, on questioning, said Boyd had taken off her clothes and put his finger inside of her.

Lt. Ashlock contacted Boyd and asked if he would come to the sheriff's office to discuss the charges. When Boyd refused, he was arrested and taken to the interview room at the sheriff's office. Boyd was given the *Miranda* warnings and the interview was recorded on tape. The tape was transcribed and Lt. Ashlock referred to it during his testimony. The tape was played twice because parts were barely audible, but the following dialogue emerged:

Boyd: Okay, let me ask you this because I've done nothing wrong.

Ashlock: Okay, that's what I'm here to find out.

Boyd: And the situation that I'm in because I don't know how you are going to react to what I say, what would be my best option, to talk to you or to get a lawyer.

Ashlock: Let me put it this way —

Boyd: I am just asking your opinion.

Ashlock: See, I can't tell you what to do, you have to make your own decision. Now, what I can tell you is that I will listen to what you have to say and I will take that into consideration. I'm going to — what I'm going to do if you want to talk to me is I'm going to ask you some standard questions.

Boyd: Um-hum

Ashlock: And give you a chance to tell your side of the story, okay?

Boyd: Um-hum.

Ashlock: And at anytime if you want to stop talking to me you just tell me, I don't want to talk to you no more and I'll — we'll stop right there.

Boyd: Do you understand my position? I feel like I am in such a jam because I have never been in prison or anything, and I have never done anything wrong.

Ashlock: Okay.

Boyd: I'm just saying I don't understand which way to go here.

Ashlock: Well, I see, like you say, I can't tell you that. If I do, they say I'm pressuring you or I am promising you.

Boyd: You're not pressuring me or promising me nothing, I'm just—

Ashlock: Okay.

Boyd: I'm asking you — let me ask you if, if you were setting in my position what would you do?

Ashlock: If I didn't do anything, I would talk to you.

Boyd: You bet I'll talk to you.

(Appellant's Abstract.)

Boyd argues the quoted dialogue is consistent with an equivocal request for counsel and reminds us of the following language in *Day* v. *State*, 306 Ark. 520, 816 S.W.2d 852 (1991):

> [W]here a suspect makes an equivocal assertion of counsel, the police must cease all questioning, except that they may attempt to clarify the suspect's desire for counsel.

But in the later case of *Davis* v. *United States*, 512 U.S. ___, 114 S.Ct. 2350 (1994), the Supreme Court took a different path, holding that an equivocal request for counsel does not obligate the police to cease questioning and seek clarification. Interrogation may continue until the suspect clearly requests counsel. We applied that holding in *Higgins* v. *State*, 317 Ark. 555, 879 S.W.2d 424 (1994). Much like this case, Higgins asked the interrogating officer, "Do you think I need an attorney?" We wrote:

> Thus we now have it on clear authority that an ambiguous reference to an attorney by a suspect after hearing his *Miranda* rights read, does not require that the interrogation cease. Mr. Higgins' reference to an attorney in this case was surely ambiguous and hardly amounted to the sort of direct request required to invoke his Fifth Amendment right to counsel. While we cannot say for certain how the Supreme Court would decide the case now before us, *the language*

*of the opinion in the Davis case leads us to suspect it would affirm on this point, thus we do so.* [Our emphasis.]

We hold that the trial court correctly applied the *Higgins* rationale in this case.

### Excusal For Cause

Boyd submits one of the venire, Arthur Barker, should have been excused for cause. During voir dire, Mr. Barker informed the court that some two years earlier his daughter had been subjected to an attempted sexual assault. She was in her car with her two children in a parking lot when a man got in the car and attempted to put his head up between her legs. By screaming and honking the horn she managed to chase him away. He said the man was later apprehended and institutionalized.

Mr. Barker was questioned at some length about the incident. He regarded it as unfortunate and while his daughter was upset at the time, she had gotten over it completely and what happened to her had no bearing on the charge in this case. The gist of his comments was that he could decide the case on the evidence and would not hesitate to return a verdict of not guilty if there were any reasonable doubt of the defendant's guilt. Boyd's motion to strike juror Barker for cause was denied.

When actual bias is in question, as opposed to bias implied by law, the qualification of the juror is within the sound discretion of the trial judge because he or she is in a better position to weigh the demeanor of the prospective juror's response to the questions on voir dire. *Linnell* v. *State*, 283 Ark. 162, 671 S.W.2d 741 (1984). Here, the overall voir dire of Barker does not suggest equivocation. His responses were satisfactory to the trial judge and we can observe no distortion of the trial court's discretion. *Franklin* v. *State*, 314 Ark. 329, 863 S.W.2d 268 (1993).

### Motion For Mistrial

In closing argument, the prosecutor said:

I have no recommendation to you about what to do with this man if you find him guilty, but I wish you would consider some of the questions in voir dire. Mr. Barker back there, his response about his incident that Mr. Rogers [defense counsel] asked him about. . .

Counsel objected and the trial judge promptly sustained the objection and told the prosecutor to move on. Counsel then moved for a mistrial and the trial judge said, "That will be denied. Mr. Elser [prosecutor] you need to keep your remarks to the proof that's before the court." On that note the prosecutor concluded his argument and the jury retired.

We begin by noting that whatever the prosecutor may have been on the verge of saying remained unsaid. Counsel's prompt objection, quickly sustained by the trial judge, averted more than an oblique reference to the voir dire of juror Barker. It may be that counsel's objection prevented reversible error, but it would be sheer conjecture on our part to speculate as to what might have been. The bottom line on mistrials is that the incident must be so prejudicial that the trial cannot, in fairness, continue. *Richmond* v. *State*, 302 Ark. 498, 791 S.W.2d 691 (1990). It would be difficult in the extreme to conclude that the trial court had abused its discretion by refusing to abort a trial for remarks that were never uttered unless it gave rise to an inference so clearly prejudicial and improper as to obviate the need for expression.

Our analysis might end here, but for the state's assertion that this point is not preserved for appeal because counsel, before moving for a mistrial, objected to the remarks and the objection was sustained. The state relies on our decision in *Sullinger* v. *State*, 310 Ark. 690, 840 S.W.2d 797 (1992) and *King* v. *State*, 312 Ark. 89, 847 S.W.2d 37 (1993). In *Sullinger* counsel moved for a mistrial based on questions posed to a defense witness by the prosecutor. The trial judge instructed the prosecutor to refrain from future questioning on the disputed point and asked counsel if he wanted the jury admonished. He said yes, adding that he wanted a mistrial. The trial judge gave a strong admonition and counsel again asked for a mistrial which was denied. On appeal we pointed out the inconsistency of requesting an admonition and a mistrial, commenting that counsel "could not have it both ways."

Similar developments arose in *King* v. *State, supra.* Counsel, in the following order, objected to a witness's response to a question posed by the prosecutor, moved to strike and moved for a mistrial on the grounds that the answer violated an order in limine. The trial judge denied the mistrial motion and asked if

counsel wanted an admonition. He answered, "Yes. At the very least note my objection." The prosecutor offered to take the witness aside and remind him not to mention the matters proscribed by the order in limine. Counsel demurred — "No. I simply asked that the objection at least be sustained. I do move for a mistrial." The trial court then sustained the objection, denied the mistrial and admonished the jury. Bolstered in part by the trial court's forceful admonition to the jury, we affirmed in these terms:

> In the case before us, defense counsel was somewhat ambivalent about the relief he wanted. On the one hand, he requested a mistrial. But on the other, he wanted his objection sustained and was agreeable to an admonition to the jury "at the very least." We have stated that a mistrial motion asserts that the error is beyond repair and cannot be corrected by any curative relief, while an objection to evidence does not carry with it the same gravity. *Sullinger* v. *State*, 310 Ark. 690, 840 S.W.2d 797 (1992). A curative instruction is an acknowledged means of curing error. *Id.* Defense counsel got part of the relief he requested.

In sum, we have noted that an objection and a motion for mistrial serve wholly different purposes, the latter being appropriate to more serious episodes. But we have not held that the denial of a motion for mistrial is waived merely because it is preceded by an objection. Quite recently in *Cupples* v. *State*, 318 Ark. 28, 883 S.W.2d 458 (1994), counsel objected to a question which he perceived to violate an order in limine, and then, his objection sustained, requested a mistrial. That was denied with an offer to give a cautionary instruction. Counsel disregarded the offer and no cautionary instruction was given. On appeal, without addressing either the initial objection or the proffered admonition, we saw no abuse of discretion because the triggering event was not sufficiently harmful. Had there been any doubt, the failure of the defense to request an admonition would have negated the mistrial motion. *Aaron* v. *State*, 312 Ark. 19, 846 S.W.2d 655 (1993). It is also true that the failure to give an admonition or cautionary instruction is not error where none is requested. *Woodruff* v. *State*, 313 Ark. 585, 856 S.W.2d 299 (1993); *Perry* v. *State*, 255 Ark. 378, 500 S.W.2d 387 (1973).

Nor do we think when a mistrial motion is denied

and the trial court offers to admonish the jury, counsel waives the mistrial motion by agreeing to an admonition. Where, however, counsel moves for a mistrial and in the same breath asks for an admonition, we believe it operates as a request for alternative relief because of the obvious inconsistency. *Sullinger* v. *State*, 310 Ark. 690, 840 S.W.2nd 797 (1992). In short, we think that in reviewing a mistrial motion, we must look at all the developing circumstances which surround the incident to determine whether a manifest abuse of discretion occurred. Whether an admonition was requested and given, or requested and refused, are relevant factors, though not necessarily definitive in reaching that conclusion.

    Affirmed.